UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INEZ (SINCERE) BONILLA<br>and AMANDA BONILLA,<br>   Plaintiffs,<br><br>   v.<br><br>ADECCO USA, INC.;<br>LULU'S FASHION LOUNGE, LLC;<br>ELIZABETH ALVARADO GONZALEZ;<br>KAYLEE SILER; and<br>CARLOS IRIZARRY;<br>   Defendants | No. 5:23-cv-02741 |

**O P I N I O N**
**Defendant Adecco's Motion to Compel Arbitration, ECF No. 5 – Granted**

**Joseph F. Leeson, Jr.**                  **March 5, 2024**
**United States District Judge**

## I. INTRODUCTION

Plaintiffs initiated the above-captioned action against their former employers alleging sex and/or gender-identity discrimination. One of the employers, Defendant Adecco, moves to enforce an arbitration agreement with Plaintiffs. Plaintiffs oppose the motion, challenging the validity and enforceability of the agreements. For the reasons set forth below, the Motion to Compel Arbitration is granted and the matter is stayed pending arbitration.

## II. BACKGROUND

According to the Complaint, Plaintiff Inez (Sincere) Bonilla, a transgender male, is married to Plaintiff Amanda Bonilla. *See* Compl. ¶¶ 8-12. In or around June 2021, Sincere began working with Defendant Adecco, a staffing agency, seeking job opportunities. *Id.* ¶¶ 16,

1a.[1]  A few months later, Sincere had surgery and stepped away from his job for medical reasons.  *Id.* ¶¶ 2a-3a.  In or around early June 2022, Sincere contacted Adecco again looking for work.  *Id.* ¶ 4a.  Sincere advised the Adecco recruiter that he and Amanda, who recently began working for Adecco, were interested in the night shift warehouse position at Defendant Lulu's Fashion Lounge, LLC.  *Id.* ¶¶ 4, 18, 4a.  Lulu's hired Sincere and Amanda, who started work on June 12, 2022.  *Id.* ¶¶ 5a-6a.  A few weeks later, Sincere disclosed that he was a transgender male to a supervisor at Lulu's.  *Id.* ¶¶ 23-24, 10a.  Immediately thereafter, the supervisors and employees at Lulu's made numerous discriminatory and harassing comments to Plaintiffs, which culminated with Plaintiffs being escorted off the premises on June 22, 2022.  *Id.* ¶¶ 12a-26a.  Plaintiffs reported the conduct to Adecco and applied for new work.  *Id.* ¶ 27a.  The Adecco recruiter to whom Sincere complained refused to call Sincere by his preferred name and/or pronoun.  *Id.* ¶¶ 28a-30a.  Sincere reported this conduct to Adecco, but no one contacted him again.  *Id.* ¶¶ 31a-32a.  Adecco also stopped placing Plaintiffs in jobs or contacting them about new employment.  *Id.* ¶¶ 30a-37a.  The Complaint asserts claims against both Defendants of discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § 2000e *et seq*. and under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951, *et seq*..

Defendant Adecco filed a Motion to Compel Arbitration, asserting that as a condition of their employment, Plaintiffs agreed to arbitrate "all disputes, claims, or controversies arising out

---

[1]  Inexplicably, Plaintiffs' counsel applies a separate numbering system to the "Material Facts" section on pages five through ten of the Complaint.  By doing so, the allegations of the Complaint run from paragraph numbers 1 through 33, then paragraph numbers 1 through 47 (in the Material Facts section), followed by paragraph numbers 34 through 45 (for the causes of action).  *See generally* Compl.  Given the duplicate paragraph numbers, this Court assigns an "a" to the paragraph numbers in the Material Facts section.

of or relating to [the] Agreement, the employment relationship between the Parties, or the termination of the employment relationship." Mot. ¶ 1, ECF No. 5. Attached to the Motion is the Voluntary Dispute Resolution and Arbitration Agreement for Consultants/Associates ("Agreement") for Sincere Bonilla and for Amanda Bonilla. *See* Agreement, Exs. A-B, ECF Nos. 5-2.

In opposition to the Motion to Compel Arbitration, Plaintiffs assert that they do no recall ever seeing or signing the Agreements. *See* Opp. 2, ECF No. 15-1. Plaintiffs contend that they asked Adecco for information about when the Agreement was allegedly signed and complain that Adecco has not provided an audit report showing when the document was sent to Plaintiffs, who sent the document, what time it was sent, what time it was signed, or the IP address of the device on which it was allegedly signed. *See id.* 2, 4-5. Attached to the opposition are declarations by Amanda and Sincere each stating: "At no point during [the hiring] process did I electronically review or sign an arbitration agreement" and "I have reviewed the agreement, and I do not recall signing the arbitration agreement in relation to my employment with Defendant Adecco." *See* Amanda Dec. ¶¶ 10, 13, ECF No. 15-2; Sincere Dec. ¶¶ 10, 13, ECF No. 15-3.

In its Reply, Adecco challenges the reliability of Plaintiffs' Declarations because Sincere's is unsigned and both make allegedly inconsistent statements: stating that the declarant "did not sign an arbitration agreement" and "do[es] not recall signing" an arbitration agreement. *See id.*; Reply 7, ECF No. 22. Attached to Adecco's Reply are the audit reports showing when the Agreements were sent and signed, as well as the timestamp and IP address of the devices on which the Agreements and all onboarding documents were completed. *See* Ex. 1 at Audit Report, Exs. E-F, ECF Nos. 22-1. Also attached to Adecco's Reply is the sworn Declaration of

Rachel Prentiss, the Operations Manager/Onboarding for Adecco. *See* Prentiss Dec., Ex. 1, ECF No. 22-1.

Prentiss explains that Adecco uses USVerify, a secure web-based application, for all associates at the time of their hire. *See* Prentiss Dec. ¶ 4. "Generally, applicants who seek placement through Adecco must first register on AdeccoUSA.com, create a username and password, and complete an application for consideration for the position. . . . If an applicant is ultimately selected for the position, the recruiter will notify the applicant that he/she must complete new hire documents through USVerify." *Id.* ¶ 7. A USVerify record is created by the recruiter by entering the associate's personal information, but the recruiter is not permitted to complete onboarding documents for the associate. *Id.* ¶ 9. The associate uses USVerify to view and complete the necessary forms, such as state tax forms, the payroll choice form, and the dispute resolution and arbitration agreement. *Id.* ¶ 8. To access the on-boarding documents in USVerify, the associate must: (1) login to the associate's own personal account email using the associate's own username and password for that account; (2) open the email sent from Adecco and click on an individualized web link; and (3) enter the email address that matches the email address to which the link was sent. *Id.* ¶ 10. Upon accessing USVerify, the associate is shown the list of documents that the associate must complete before being placed on an assignment. *Id.* ¶ 11. The first document is Form I-9, on which the associate agrees that the associate is the person completing the form, and the second is the Electronic Signature Agreement. *Id.* Before the associate can proceed in accessing any other document the associate must acknowledge and agree to the Electronic Signature Agreement. *Id.* Upon acknowledging agreement, the associate is then directed to several documents before the Dispute Resolution and Arbitration Agreement for Consultants/Associates form. *Id.* ¶ 12. Associates must electronically sign this form by (1)

4
030524

scrolling through the document to the bottom; (2) selecting a button to sign, and (3) clicking on a green button indicating "Sign and Continue" before the associate can proceed with the next document in USVerify. *Id.* ¶ 12.

As to Plaintiffs specifically, Prentiss attests that on June 6, 2022, Sincere and Amanda were sent separate emails by an Adecco representative to the email address each individual registered with Adecco so that Sincere and Amanda could access USVerify and complete their on-boarding. *See* Prentiss Dec. ¶ 9. Using the USVerify website, Sincere and Amanda each separately completed and electronically signed their onboarding documents. *Id.* The Electronic Signature Agreements, which Sincere and Amanda each electronically signed and dated June 6, 2022, state:

> By providing your electronic signature below, you:
> - Agree that your electronic signature holds the same value as your signature.
> - Agree that you have fully read and understand all information preceding your electronic signature in each location where your electronic signature appears.
> **By clicking the "Electronically Sign This Form" button below I certify that the above information is true and correct, and I agree to the conditions of hiring.**

*See* Ex. 1 at El. Sign., Exs. A-B, ECF Nos. 22-1 (emphasis in original). Sincere and Amanda also electronically signed the Dispute Resolution and Arbitration Agreement for Consultants/Associates form ("Agreement"). Prentiss Dec. ¶ 12. The Agreements state in pertinent part:

> . . . the Company and Employee[2] agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the Parties, or the termination of the employment relationship (collectively, "Claims" or individually, "Claim"), shall be resolved by binding arbitration in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect, except as noted in Paragraph 2. . . . The agreement to arbitrate includes any Claims that the Company may have against Employee, and/or that Employee may have against the Company, Company

---

[2] Inez Bonilla [Sincere] is the "Employee" in his Agreement. *See* Ex. A. Amanda Bonilla is the "Employee" in her Agreement. *See* Ex. B.

> Client(s), and/or Company and/or Company Client(s)' officers, directors, employees, agents, or parent, subsidiary, or affiliated entities, except as set forth below. . . . This Agreement shall be enforceable under and subject to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* and shall survive after the employment relationship terminates.

Agreements ¶ 1, Exs. A-B, ECF Nos. 5-2. The Agreements contain an "Arbitration Opt-Out Option," which provides:

> Within 30 days after signing this Agreement, Employee may submit a form stating that Employee wishes to opt out and not be subject to the arbitration requirements in this Dispute Resolution Agreement. . . . Should Employee not opt out of the Dispute Resolution Agreement in a timely manner, Employee and the Company will be deemed to have mutually accepted the terms of the Dispute Resolution Agreement.

*Id.* ¶ 9. Neither Sincere nor Amanda opted out of the Agreement. *See* Prentiss Dec. ¶ 16 (attesting that after reviewing the USVerify records for Sincere and for Amanda and confirming with the designated custodian of Opt Out forms with Adecco's HR Department, Adecco did not receive any e-mail or any request by Sincere or Amanda asking for the Opt Out form, nor is there any record of a signed and executed Opt Out form from Sincere or Amanda).

The Agreements further state: "Employee has read this Dispute Resolution Agreement carefully, fully understands the meaning of its terms and is signing it knowingly and voluntarily." Agreements ¶ 11. Immediately above the signatures, the Agreements further provide: "The Parties have voluntarily and knowingly executed this Dispute Resolution Agreement on the day and year signed by Employee below." *See* Agreements page 3. Each Agreement is physically signed by a representative of Adecco, is electronically signed by Sincere and by Amanda, and is dated June 6, 2022. *Id.* The date and time of the electronic signatures on the Agreements and on all onboarding documents, as well as the IP address of the computers used to complete each document on USVerify, are listed in the audit reports. *See* Audit Reports.

The Audit Report for Sincere shows, *inter alia*, that on June 6, 2022, Sincere completed Adecco's Electronic Signature form at 8:11:42 CST.  *See* Audit Report, Ex. F.  At 8:13:01 CST, Sincere completed Adecco's Dispute Resolution and Arbitration Agreement.  *Id.*  Seven forms later, Sincere, completed her Federal W4 at 8:16:46 CST, followed by Adecco's Confidentiality and Non-Disclosure Agreement form then its Easy Pay form[3] at 8:19:50 CST.  *Id.*  All forms were completed by Sincere using the same IP address.  *Id.*

This IP address was also used by Amanda, as is shown in her Audit Report.  *See* Audit Report, Ex. E.  This Audit Report shows, *inter alia*, that on June 6, 2022, Amanda completed Adecco's Electronic Signature form at 8:56:39 CST.  *See id.*  At 8:57:35 CST, Amanda completed Adecco's Dispute Resolution and Arbitration Agreement.  *Id.*  Seven forms later, Amanda completed her Federal W4 at 9:03:43 CST, followed by Adecco's Confidentiality and Non-Disclosure Agreement form then its Easy Pay form at 9:05:38 CST.  *Id.*

## III.     STANDARDS OF REVIEW

### A.     Motion to Compel Arbitration – Review of Applicable Law

"It is well established that the Federal Arbitration Act (FAA), reflects a strong federal policy in favor of the resolution of disputes through arbitration."  *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations omitted).  "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement."  *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 522 (3d Cir. 2009).

---

[3]     The Easy Pay form is utilized by Adecco to gather information from its employees regarding the method in which the employee wishes to be paid, including direct deposit.  *See* Reply 6 n.3 ("When signing this form, Plaintiffs entered their bank routing and account numbers so that they could be paid by Adecco.").  *See also* https://www.adeccousa.com/working-with-a-staffing-agency/staffing-agency-benefits-and-pay/

To determine whether there was a valid arbitration agreement, the court applies state-law principles of contract formation. *See Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599-600 (3d Cir. 2020). Under Pennsylvania law, the court considers: "(1) whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration." *Atacs Corp. v. Trans World Communs.*, 155 F.3d 659, 666 (3d Cir. 1998). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). "A party opposing a motion to compel arbitration bears the burden of proving the arbitration clause unenforceable." *Antkowiak v. Taxmasters*, 455 F. App'x 156, 159 (3d Cir. 2011) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). "All reasonable inferences from the evidence are to be granted to the party opposing arbitration." *Antkowiak*, 455 F. App'x at 159.

In deciding whether to compel arbitration, a district may either employ the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) or the motion for summary judgment standard under Federal Rule of Civil Procedure 56. *See MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 732 (E.D. Pa. 2013). If arbitrability is not apparent on the face of the complaint or if the non-moving party has "come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, . . . the issue should be judged under the Rule 56 standard." *Guidotti v. Legal Helpers Debt Resolution L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (internal quotations omitted). The summary judgment standard is also applied if the parties rely on factual evidence outside the pleadings in arguing that arbitration is or is not appropriate. *See Smeck v. Comcast Cable Communs. Mgmt., LLC*, No. 19-cv-3625-JMY, 2020 U.S. Dist. LEXIS 221526, at *8 (E.D. Pa. Nov. 25, 2020).

### B.      Motion for Summary Judgment - Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257. The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### IV.     ANALYSIS

#### A.      The request to compel arbitration is granted.

Initially, the Court finds there was a valid agreement to arbitrate. The electronic signatures of Sincere and of Amanda are sufficient to indicate the parties' intent to be bound by the Agreement. *See Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019) ("Pennsylvania, as most jurisdictions, recognizes the e-signature as a valid means to register legal assent."); 73 Pa. S.A. § 2260.305(a) ("An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable."). "While the Third Circuit has not ruled directly on the issue, courts within the Third Circuit have generally found that an electronic signature is binding even where the signer does not remember electronically signing the document." *Martin v. Liberty Mut. Ins. Co.*, No. 21-4360, 2023 U.S. Dist. LEXIS 47169, at *12-13 (E.D. Pa. Mar. 20, 2023) (citing cases).

Moreover, Plaintiffs have not disputed Prentiss's Declaration, the E-Signature Agreements, or the Audit Reports, nor has a signed declaration by Sincere been submitted.[4] *See Juric v. Dick's Sporting Goods, Inc.*, No. 2:20-CV-00651-MJH, 2020 U.S. Dist. LEXIS 137299, at *10 (W.D. Pa. Aug. 3, 2020) (finding that although some of the plaintiffs denied acknowledging receipt of the arbitration agreement, they produced no affidavits or other evidence that rebuts the defendant's onboarding process or the accuracy of its record keeping methods). Neither the unsworn declaration by Sincere, nor Amanda's declaration, both of which offer mixed statements about whether they did not sign the Agreements or do not recall signing

---

[4] At the time the unsigned declaration was submitted, Plaintiffs' counsel stated that he had been unable to obtain the signed version and would submit a signed version once obtained. *See* Opp. 2, n.1. Approximately six (6) months have elapsed, but a signed declaration has never been presented to the Court.

the Agreements, create a genuine dispute of fact as to their intent to be bound by or the validity of the Agreement.  *See Martin*, 2023 U.S. Dist. LEXIS 47169, at *12-13 (concluding that the plaintiffs had not presented evidence -beyond one plaintiff's deposition testimony that she did not sign or does not remember electronically signing the form in question- to create a genuine dispute of fact as to the validity of the agreement that would refute the defendant's evidence of the forms showing electronic signatures, the plaintiffs' electronic payments and communications, the plaintiff's e-mail and IP address used to electronically sign the forms, and the time stamps showing when the plaintiffs viewed and electronically signed the forms).  Significantly, Adecco has presented evidence that all associates must complete their onboarding documents using USVerify[5] and of the safeguards used to protect the documents from being completed by anyone other than the associate, including the need for the associate to login from a personal email account using the associate's own username and password, to then click on an individualized web link in that email, and to then verify the associate's email address.  *See Juric*, 2020 U.S. Dist. LEXIS 137299, at *24-25 (finding that the plaintiffs' assertion that they do not remember executing the arbitration agreements did not create a factual dispute where the defendant's records demonstrate that each new hire logs in using his or her personal account to execute the arbitration agreement); *Gomez v. Rent-A-Center, Inc.*, No. 2:18-cv-1528-KM-SCM, 2018 U.S. Dist. LEXIS 114910, at *9 (D.N.J. July 10, 2018) (concluding that the plaintiff failed to create a dispute that the arbitration agreement was electronically signed by anyone else because the defendant submitted uncontradicted evidence that ample safeguards were in place to prevent just

---

[5] *See Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 258 (E.D.N.Y. 2022) (recognizing USVerify as a web-based application that provides a means by which prospective employees, after they have received an offer of employment, can complete a package of initial employment forms online applying signature(s) on each form electronically).

anyone from signing the agreement, such as the need for the plaintiff to set up and use a unique electronic signature password known only to her).  Adecco has also presented evidence in the form of Audit Reports showing the IP addresses used to access all documents and the exact time and date the Agreements were signed, which was only minutes from the completion of other onboarding documents personal to Plaintiffs.  *See Boehm-Scharff v. Rue21, Inc.*, No. 2:23-cv-227-NR, 2023 U.S. Dist. LEXIS 193892, at *2, *17 n.6  (W.D. Pa. Oct. 30, 2023) (compelling arbitration because the plaintiff's testimony that she could not remember much of her onboarding process and equivocal denials about ever signing the arbitration agreement were insufficient to create a genuine dispute of material fact as to the formation of that agreement in light of the digital paper trail offered by the defendants to support its version of events).

Furthermore, the terms of the Agreements are sufficiently definite to be enforced.  *See Soroko v. ATMOS, Inc.*, No. 11-6120, 2015 U.S. Dist. LEXIS 127317, at *16 (E.D. Pa. Sep. 23, 2015) (finding that the terms of the arbitration agreement were sufficiently definite to be enforced because, *inter alia*, there was a certain basis for a court to provide a remedy under the arbitration provisions).  There was also consideration for the Agreements.  *See Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002) ("When both parties have agreed to be bound by arbitration, adequate consideration exists and the arbitration agreement should be enforced.").  Accordingly, there was a valid agreement to arbitrate.  *See Juric*, 2020 U.S. Dist. LEXIS 137299, at *27-28 ("In circumstances such as this one, where plaintiffs denied agreeing to arbitration but electronic records proved otherwise, courts have rejected those challenges as a basis to deny contract formation.").  The claims at issue in the above-captioned action fall within the scope of the Agreements.  Adecco's Motion to Compel Arbitration is therefore granted.

    B.   **The action is stayed pending arbitration.**

Section 3 of the FAA requires that a court stay an action pending arbitration when a party has requested a stay, and § 7304(d) of the Pennsylvania Arbitration Act ("PAA") requires a stay of judicial proceedings whenever an issue is referred to arbitration.  *See Kauffman v. U-Haul Int'l, Inc.*, No. 5:16-cv-04580, 2018 U.S. Dist. LEXIS 145717, at *32-33 (E.D. Pa. Aug. 27, 2018).  Accordingly, because Plaintiffs, who have requested a stay, have alleged both federal and state-law claims, the above-captioned action must be stayed pending resolution of arbitration.

## V.      CONCLUSION

Plaintiffs each signed a valid agreement to arbitrate with Adecco, which covers the claims at issue in the above-captioned action.  Adecco's Motion to Compel Arbitration is therefore granted.  Due to the presence of state-law claims, as well as Plaintiffs' request to stay the litigation pending arbitration, the above-captioned action is stayed pending resolution of the arbitration proceedings.

A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

030524